BUTTLE R, J.
Wife appeals from an order denying her motion for a change of child custody. We affirm. The parties were married in 1960; the marriage was dissolved in 1974, and custody of the three children, two daughters and a son, now ages 17, 14 and 12, respectively, was split between the parents in accordance with a custody agreement: husband was awarded custody of the eldest and youngest child, and wife was awarded custody of the remaining daughter.
At the time of the dissolution, and in large part a reason for the custody agreement, wife was experiencing serious emotional difficulties requiring professional help. Since that time, however, her condition has improved significantly, evidenced in part by her returning to school and becoming licensed to sell real estate. She is now economically self-sufficient and otherwise capable of caring for the children. She has remarried, and although is still under the periodic care of a psychiatrist, she appears to have adjusted well to her new life. In the summer of 1976, the elder daughter, having attained the age of 16, chose to live with her mother and now resides with mother and her new husband.
This custody dispute is over the only child remaining with husband, the 12-year old boy. It is apparent from the record that husband’s circumstances have not changed in any material respect, and our analysis is, accordingly, guided by the recent case of Greisamer and Greisamer, 276 Or 397, 400-401, 555 P2d 28 (1976):
" '* * * In order to justify a modification for the care and custody of a minor child the * * * [moving party] is under the burden to show that it would enhance the welfare of the child, or that the change in circumstances since the rendition of the last decree has been such as injuriously affected the child.’ [Citing Henrickson v. Henrickson, 225 Or 398, 402-03, 358 P2d 507 (1961).]
"It is clear from this statement of the rule tht the original decree awarding custody to one of the contesting *[978] parents will not be disturbed unless the plaintiff seeking a change in custody adduces evidence showing (1) that subsequent to the original decree events relevant to the capacity of the plaintiff or the custodial parent to properly take care of the child have changed, and (2) that considering the change in circumstances in the context of all relevant evidence it would be for the best interests of the child to change the custody from the custodial parent to the other. Step one in the inquiry may be satisfied by showing that after the original decree awarding custody was entered, the custodial parent’s circumstances made him less capable of providing care for the child, or that the circumstances of the plaintiff seeking a change in custody had improved, or that both such conditions arose following the initial decree.
"In the present case there was no evidence showing that the father’s [custodial parent’s] circumstances had changed; we have evidence only of the improved circumstances of the mother. The second step in the analysis requires an appraisal of the mother’s change in circumstances as it affects the best interests of the child. Such an appraisal necessarily calls for a comparison between the child’s interests which will be served if it remains with the father and the child’s interests which will be served if custody is awarded to the mother. * * *”
 Assuming that wife, by substantially improving her own circumstances, has met her burden with respect to the first half of the test, we must determine whether "in the context of all relevant evidence it would be for the best interests of the child to change the custody.” Wife’s principal argument revolves around a general preference to keep siblings together. Amundson v. Amundson, 7 Or App 33, 489 P2d 983 (1971); Kesterson and Kesterson, 30 Or App 963, 569 P2d 42 (1977). Such a preference, in the absence of other factors, carries weight in determining custody in the first instance; however, it is considerably less persuasive where custody was divided initially and a change is sought years later. In the latter situation, our previous decisions lead us to the conclusion that maintenance of the status quo is generally preferable to "shifting parental figures.” McCutchan and *[979] McCutchan, 5 Or App 96, 99, 483 P2d 93 (1971); Cf. Niedert and Niedert, 28 Or App 309, 559 P2d 515, rev den (1977). Wife points out, however, that the status quo is to be changed in any event, because her oldest daughter is now in her custody, and she and her new husband will be moving with the two daughters to Florida. Her argument is that while the young boy previously had a close relationship with his sisters because of frequent visits, that advantage will be lost unless she is granted custody so that he may move with them.
While there is much to be said for wife’s contention, we must balance the apparent advantages of the son’s close contact with his mother and sisters against the disruption which will result by requiring him to leave his father, and uprooting him from a familiar neighborhood, friends and school situation. All indications are that the boy is intelligent and articulate, is doing well in school and in sports, and that he is well-adjusted, happy and "seems to enjoy life.” The father is a caring and capable man who displays more than normal interest in his son’s progress in school.
 . In child custody cases, more than in any other area of domestic relations law, the conclusions of the trial judge, who sees and hears the parents, the child and other witnesses face-to-face, should be accorded great weight, notwithstanding our de novo review. Niedert and Niedert, supra; Hooker and Hooker, 29 Or App 609, 564 P2d 1078 (1977). In this case, the trial court determined that the best interests of the son were to remain with his father. We cannot say that the trial court’s judgment was "manifestly mistaken.” Starin and Starin, 29 Or App 557, 564 P2d 748, rev den (1977).
 Wife also assigns error to the ruling of the trial court striking her supplemental affidavit filed two days before the hearing. A motion for change of custody, supported by affidavits, is a pleading gov *[980] emed by ORS 16.360,[1] which requires a motion to supplement original pleadings, and ORS 16.390,[2] which allows pleadings to be amended "in furtherance of justice” in the discretion of the trial judge. Hunter v. Hunter, 179 Or 349, 357, 170 P2d 720 (1946); Sakraida v. Sakraida, 192 Or 217, 226, 217 P2d 242, 233 P2d 762 (1951). The trial court did not abuse its discretion.
Affirmed. Costs to respondent.

ORS 16.360 provides:
"The plaintiff and defendant, respectively, may be allowed on motion to make a supplemental complaint, answer or reply, alleging facts material to the case, occurring after the former complaint, answer or reply.”

ORS 16.390 provides:
"The court may, at any time before trial, in furtherance of justice, and upon such terms as may be proper, allow any pleading or proceeding to be amended by adding the name of a party, or other allegation material to the cause; and in like manner and for like reasons may, at any time before the cause is submitted, allow such pleading or proceeding to be amended, by striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or when the amendment does not substantially change the cause of action or defense, by conforming the pleading or proceeding to the facts proved.”