Argued February 23, affirmed April 3, 1978

In the Matter of Corey Allen Maves and
Benjamin Lee Maves, Children,
STATE ex rel JUVENILE DEPARTMENT OF
POLK COUNTY et al, *Respondents,*
*v.*
MAVES, *Appellant.*
(No. J-2425, CA 9212)
576 P2d 826

Chris L. Lillegard, Dallas, argued the cause for appellant. On the brief was Mark A. Bliven, Dallas.

John L. Snyder, District Attorney, Dallas, argued the cause and filed the brief for respondent State ex rel Juvenile Department of Polk County.

No appearance for respondent children.

Before Schwab, Chief Judge, and Johnson, Gillette and Roberts, Judges.

JOHNSON, J.

## JOHNSON, J.

■ The mother appeals the trial court's decree terminating her parental rights in her children, aged seven and three. The principal issue in this case is factual, requiring a de novo review of the record. There are several reasons set forth in *Sarty v. Forney,* 12 Or App 251, 506 P2d 535 (1973), and *Bowman v. Oregon Transfer Company,* 33 Or App 241, 576 P2d 27 (1978), for not publishing detailed opinions in all de novo cases of this nature. Some of those reasons would justify a summary affirmance here. In the future, we do not intend to render detailed opinions in such cases unless warranted by the particular circumstances of the case. By affirming a decision without opinion in such a case we are merely stating that we have reviewed the record, weighed the evidence and concur in the decision of the trial court. We are writing an opinion in the present case to reiterate certain principles relating to our role as an appellate court on de novo review. Those principles were generally set down in *McCoy and McCoy,* 28 Or App 919, 562 P2d 207, 29 Or App 287, 563 P2d 738 (1977).

The petition for termination here alleged generally that the mother is unfit by reason of conduct or condition seriously detrimental to the children making integration of the children into her home improbable in the foreseeable future, and that there has been a lack of effort by the mother to adjust her circumstances, conduct or conditions so as to make return of the children possible. Specifically, the petition alleged that the mother had a history of mental illness, that she had exhibited abusive conduct toward her children, and that she had been uncooperative with efforts to reunite her with her children. The trial court made the following findings and conclusions:

"5. That said children are dependent for care and support on a public child-caring agency that needs the services of the Court in planning for their best interests; and their parents have failed to provide them with the

support, care, guidance and protection necessary for their physical, mental and emotional well-being.

"6. That dating back to a period prior to the birth of the child, Corey Allen Maves, the mother has had and continues to have an emotional and mental illness.

"7. That Karen Maves is unable to tolerate stress and that while both children have been in her custody she has been unable to cope with the situation; and this has been evidenced by a course of shouting at the children without any justification and like conduct;

"8. That while in the custody of Karen Maves the mother's attitude toward and treatment of the children have adversely affected their personality and development; there has been a marked improvement in these areas when the children have not been in her custody;

"9. Almost from birth, the aforesaid children have been in foster care many times, quite often at the request of their mother, Karen Maves;

"10. That throughout the life of each of the children services of social agencies were made available and that after all reasonable efforts were made by such agencies no lasting adjustments have been effected;

"11. That the mother Karen Maves, does not have the capacity to care for the children for extended periods of time;

"12. *That it is unlikely the emotional instability of the mother will change in the foreseeable future and that the integration of the children into the home of the mother is improbable;*

"13. It is in the best interests of the children that the parental rights of Karen Maves be terminated and they be freed for adoptive placement.

"CONCLUSIONS OF LAW

"Wherefore, the Court concludes as a matter of law:
"* * * * *

"4. That the mother of the aforesaid children, Karen Maves, suffers from emotional illness, mental illness or mental deficiency of such duration as to render it impossible for her to care for the children for extended periods of time.

[ 414 ]

"5. That the mother of the children Karen Maves has exhibited conduct toward the aforesaid children which is abusive.

"6. That there has been a failure of the aforesaid Karen Maves to effect a lasting adjustment after reasonable efforts by available social agencies for such extended duration of time *that it appears reasonable that no lasting adjustment can be effected."* (Emphasis supplied)

We are persuaded from the record that the non-italicized findings are correct. There is ample evidence, much of which is uncontested, supporting these factual findings. The mother conceded that prior to October 1, 1976, she was unable to cope with the children. The italicized findings and conclusions, however, deal with a far less tangible matter concerning the mother's potential to perform as a parent in the future. The thrust of her argument on appeal is that during the period from October 1, 1972 to July, 1977, when the hearing occurred, she had undergone a personality change and could now adequately perform as a parent. There is a sparsity of probative evidence concerning this period. The state's witnesses had no opportunity to observe the mother because on the advice of her counsel the mother had refused to have contact with Children's Services Division. The mother testified as to her change of condition and her testimony was corroborated by her pastor and neighbors. However, the corroborating witnesses had only a limited opportunity to observe the mother and had not observed her with her children who at the time were in foster care.

■■ In spite of the testimony favorable to the mother, we could infer from her past erratic behavior that it is unlikely her improved condition could be sustained, particularly if she takes on the added responsibility of caring for her children. Drawing such inferences from a typewritten transcript is an unreliable and imperfect method for resolving human questions of this magnitude. There is no serious question raised as to the

veracity or sincerity of any of the witnesses. Rather, the case turns on an evaluation of the character and personality of the mother. The trial court judge is in the preferred position to make that evaluation, not only because he saw and heard the mother as a witness, but also because he was able to see and hear the 14 other witnesses and thus better appraise their competence to evaluate the mother. On de novo review we are required to make an independent review of the record, weigh the evidence and exercise independent judgment. In the exercise of that judgment, however, we give consideration to the trial court's opportunity to see and hear witnesses, particularly when the ultimate issues hinge on witnesses' credibility, character and personality. *See McCoy and McCoy, supra* at 924-925. Affording that consideration here, we concur with the trial court.

The mother also assigns as error the admission of the entire Children's Services Division file. The practice appears to be for Children's Services Division to offer such evidence in every termination case and for the other counsel to assign the admission as error on appeal. In *State ex rel Juv. Dept. v. Robinson,* 31 Or App 1097, 572 P2d 336 (1977), *rev den* 281 Or 531 (1978), the rules regarding the admissibility of such files were stated and the procedures for making objections were set forth. This assignment does not warrant further discussion because appellant did not follow the proper procedures.

Affirmed.